Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| WANDA RAMÍREZ MONTALVO<br><br>Apelante<br><br>v.<br><br>JOSÉ ENRIQUE RODRÍGUEZ ROSA<br><br>Apelado | KLAN202301071 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Aguada<br><br>Caso número: AU2021CV00303<br><br>Sobre: Liquidación de Comunidad de Bienes |
|---|---|---|

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 8 de marzo de 2024.

Comparece la parte apelante, Wanda Ramírez Montalvo, y nos solicita que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguada, el 23 de octubre de 2023, notificada al día siguiente. Mediante dicho dictamen, el foro primario determinó que las partes contrajeron matrimonio bajo el régimen de separación de bienes.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado.

**I**

El 21 de junio de 2021, Wanda Ramírez Montalvo (Ramírez Montalvo o apelante) incoó una *Demanda* sobre liquidación de comunidad de bienes en contra de José E. Rodríguez Rosa (Rodríguez Rosa o apelado).[1] Indicó que, el 30 de junio de 1999, las partes contrajeron matrimonio, el cual posteriormente fue disuelto mediante *Sentencia* de divorcio el 21 de abril de 2021. Según adujo, previo a contraer nupcias, las partes otorgaron una Escritura de Capitulaciones Matrimoniales. Alegó

---

[1] Apéndice del recurso, págs. 1-3.

Número Identificador

SEN2024 _____

que, antes y durante el matrimonio, las partes adquirieron en comunidad bienes muebles e inmuebles. En particular, planteó que, el 25 de junio de 1999, las partes adquirieron a título oneroso, en partes iguales y en comunidad, un solar sito en Aguada, donde, de igual forma, construyeron una residencia. Arguyó que las partes suscribieron un préstamo hipotecario para la construcción del referido inmueble, el cual seguía gravado. Especificó que dicho préstamo, así como los bienes muebles y gastos del hogar, también habían sido costeados con el dinero y esfuerzo generado por ambas partes. Señaló que Rodríguez Rosa tenía la posesión y el disfrute exclusivo de la residencia en perjuicio de esta. Por ello, solicitó que se impusiera a Rodríguez Rosa una renta de mercado y se colacionara el pago que correspondiese a favor de esta. Por otro lado, solicitó que se determinara el valor de los bienes sujetos a liquidación y la participación de cada comunero. Asimismo, solicitó la liquidación de la comunidad, que se dispusiese del inmueble en cuestión y que se liberara el crédito de esta de la referida deuda hipotecaria.

Por su parte, el 22 de octubre de 2021, Rodríguez Rosa presentó su alegación responsiva.[2] Sostuvo que las partes habían estipulado la total separación de los bienes, previo a contraer matrimonio, por lo que no existía la comunidad alegada por Ramírez Montalvo. Alegó ser el único que había pagado por la adquisición de todos los bienes reclamados en la acción de epígrafe y que Ramírez Montalvo no había aportado suma alguna para la obtención de los bienes cuya participación reclamaba. En particular, sostuvo que el pago del solar y la construcción de la residencia las realizó con su dinero privativo y a través de un préstamo hipotecario, pero que Ramírez Montalvo no había hecho ninguna aportación para la adquisición de dichos inmuebles. Por ello, planteó que no existían bienes sujetos a liquidación entre las partes. Particularizó que, previo al matrimonio, las partes habían otorgado capitulaciones matrimoniales y, en estas, excluyeron el régimen de sociedad legal de gananciales.

---

[2] Apéndice del recurso, págs. 14-17.

Por otro lado, Rodríguez Rosa argumentó en su escrito que Ramírez Montalvo estaba actuando en contra de sus propios actos, toda vez que había juramentado una petición de divorcio por la causal de consentimiento mutuo en la cual aceptó que no había adquirido bienes muebles o inmuebles ni deudas. Arguyó que el foro primario había emitido una *Sentencia* de divorcio por la causal solicitada, basado en el testimonio juramentado de las partes sobre que no adquirieron bienes ni deudas juntos; pero, oportunamente, estos solicitaron que se dejara sin efecto el dictamen por haberse reconciliado. Indicó que, posteriormente, el 21 de abril de 2021, el matrimonio se disolvió mediante *Sentencia* de divorcio por la causal de ruptura irreparable, en la cual se determinó que el matrimonio se había regido por una total separación de bienes y que, durante la vigencia del mismo, no se adquirieron bienes ni deudas.

El 29 de abril de 2022, se celebró la Conferencia Inicial.[3] Surge de la *Minuta* que la representación legal de Ramírez Montalvo manifestó que las partes habían otorgado capitulaciones matrimoniales, pero que se casaron luego de un tiempo. Asimismo, hizo señalamientos en cuanto a lo que se pactó en dichas capitulaciones y lo que se podía deducir de una de las cláusulas de esta. Por su parte, la representación legal de Rodríguez Rosa expuso que existía una total separación de bienes, que la hipoteca se encontraba a nombre de su representado y que dicho gravamen se le debitaba de su cuenta bancaria.

Posteriormente, el 18 de agosto de 2022, celebraron un *Status Conference.*[4] Se desprende de la *Minuta* que la representación legal de Rodríguez Rosa indicó que las partes tuvieron una ruptura y luego hubo una reconciliación, hasta que la relación finalizó en separación, pero que la Escritura de Capitulaciones en controversia quedó vigente. Sobre ello, la representación legal de Ramírez Montalvo ratificó la información provista y sostuvo que dicha Escritura era válida y el pago de la hipoteca de la

---

[3] Apéndice del recurso, pág. 22.
[4] Íd., págs. 23-24.

residencia conyugal fue parte de lo que Rodríguez Rosa había asumido, por lo que entendía que este no podía reclamar créditos.

Así las cosas, el 30 de noviembre de 2022, Ramírez Montalvo solicitó enmendar la demanda.[5] En lo pertinente, pretendía añadir las siguientes alegaciones: (1) que, previo al matrimonio, las partes no otorgaron capitulaciones matrimoniales, por lo que rigió la sociedad legal de gananciales; (2) que, antes y durante el matrimonio, las partes adquirieron bienes muebles e inmuebles, inicialmente en comunidad y luego bajo el régimen de sociedad legal de gananciales; (3) que, antes y durante el matrimonio, las partes incurrieron en deudas y obligaciones.

Al día siguiente, se celebró una vista híbrida.[6] Según surge de la *Minuta*, la representación legal de Rodríguez Rosa expresó estar sorprendida por la solicitud de enmienda a la demanda que se realizó en esa etapa de los procedimientos. En respuesta, la representación legal de Ramírez Montalvo informó que, luego de estudiar la situación, se percató que en las capitulaciones se había pactado una fecha de matrimonio, pero no se casaron en ella. Añadió que, conforme al Artículo 1278 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3562, esas capitulaciones eran nulas, por lo que procedía enmendar la demanda para que se aclarara que el matrimonio no se rigió por dicha Escritura.

Además, surge de la *Minuta* de dicha vista que, en oposición, la representación legal de Rodríguez Rosa sostuvo que, aun cuando el Código Civil disponía que las capitulaciones se suscribían previo al matrimonio, no había jurisprudencia que estableciera que estas eran nulas si el matrimonio no se celebraba en la fecha que se indicó. Sobre ello, abundó que la fecha de matrimonio no era un requisito y que, independientemente de que las partes no se casaron el día que se indicó en las capitulaciones, estas nunca se dejaron sin efecto. Reiteró que era sorpresivo que, luego de un proceso de descubrimiento de prueba, se

---

[5] Apéndice del recurso, págs. 25-30.
[6] Íd., págs. 31-32.

solicitara una enmienda a la demanda cuando en el divorcio se indicó que existían capitulaciones y que no había bienes que dividir, con excepción de una residencia gravada por una hipoteca suscrita por su representado. Arguyó que el argumento presentado por la otra parte para solicitar la enmienda era uno frívolo, pues las partes habían contraído matrimonio, por lo que la referida Escritura de Capitulaciones no era nula. En vista de ello, el foro sentenciador concedió un término para que Rodríguez Rosa fijara su posición en cuanto a la solicitud de enmienda a la demanda promovida por Ramírez Montalvo.

En atención a ello, el 12 de diciembre de 2022, Rodríguez Rosa sometió una *Moción en Cumplimiento de Orden*.[7] En esencia, reiteró los argumentos vertidos en la vista híbrida y enfatizó que, el hecho de que las partes se casaran en una fecha posterior a la incluida en las capitulaciones, no las invalidaba. En cuanto a ese asunto, alegó que incluir la fecha proyectada para casarse en las capitulaciones no era un requisito de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, según enmendada, 4 LPRA sec. 2001 *et seq*., ni de su Reglamento; pero que, hacerlo constar, no invalidaba la Escritura. Arguyó que las capitulaciones matrimoniales cobraban vigencia con el matrimonio de las partes. Por otro lado, planteó que, en el *Status Conference* celebrado el 18 de agosto de 2022, Ramírez Montalvo había indicado que las capitulaciones matrimoniales eran válidas. Asimismo, argumentó que la postura de Ramírez Montalvo era temeraria, toda vez que las partes originalmente habían radicado una petición de divorcio por consentimiento mutuo donde estipularon, bajo juramento, la existencia de las capitulaciones en cuestión. Igualmente, adujo que surgía de las determinaciones de hechos esbozadas en la *Sentencia* de divorcio por ruptura irreparable que las partes habían otorgado capitulaciones matrimoniales bajo la Escritura Número 96 del 28 de diciembre de 1998 ante notario público, por lo que el matrimonio se rigió

---

[7] Apéndice del recurso, págs. 33-36.

por una total separación de bienes. En virtud de lo anterior, se opuso a la solicitud de enmienda a la acción de epígrafe.

Atendidos los planteamientos de las partes, el 21 de diciembre de 2022, el Tribunal de Primera Instancia emitió una *Orden*, mediante la cual autorizó la enmienda a la demanda solicitada por Ramírez Montalvo.[8] Ante ello, el 23 de enero de 2023, Rodríguez Rosa presentó una *Contestación a Demanda Enmendada*.[9]

Posteriormente, el 19 de abril de 2023, celebraron un *Status Conference*.[10] De la *Minuta* surge que la representación legal de Rodríguez Rosa expresó que ameritaba la celebración de una vista evidenciaria para determinar la existencia o no de las capitulaciones matrimoniales en controversia. Asimismo, indicó que, en dicha vista, se debían evaluar las argumentaciones de las partes por entender que se trataba de un planteamiento de derecho. Por su parte, la representación legal de Ramírez Montalvo no se opuso a la antedicha solicitud, pero señaló la necesidad de evaluar lo que tenía para poder prepararse para la mencionada vista. Entendido lo anterior, el foro de instancia señaló la vista evidenciaria solicitada.

El 24 de agosto de 2023, se celebró la vista evidenciaria, con el fin de determinar si las partes habían contraído matrimonio con o sin capitulaciones.[11] En específico, según descrito en la *Minuta*, al foro juzgador le correspondía determinar si las capitulaciones se mantuvieron vigentes. La representación legal de Ramírez Montalvo aclaró que su interrogatorio iba dirigido a la intención de las partes, ya que entendía que la Escritura de Capitulaciones era clara y hablaba por sí misma. De otro lado, Ramírez Montalvo testificó sobre el año en el que había contraído matrimonio con Rodríguez Rosa y describió la situación que ocurrió con relación a las capitulaciones matrimoniales antes de la fecha de la boda. Igualmente, expuso que, luego de resolver dicha situación, contrajo

---

[8] Apéndice del recurso, págs. 37-38.
[9] Íd., págs. 40-43.
[10] Íd., págs. 46, 49.
[11] Íd., págs. 47-48, 50-51.

matrimonio. Además, indicó los bienes que, según alegó, había adquirido con Rodríguez Rosa mientras estuvieron casados y testificó sobre las situaciones que llevaron a las partes al divorcio. Luego del contrainterrogatorio y redirecto de esta, la representación legal de Rodríguez Rosa dio por sometido el asunto y sostuvo su postura de que operaban las capitulaciones matrimoniales, las cuales estaban notarizadas. Por su parte, la representación legal de Ramírez Montalvo argumentó que las capitulaciones en cuestión no existían, toda vez que las partes nunca hicieron constar la existencia de estas durante su matrimonio.

Evaluadas las posturas de las partes, incluyendo los memorandos de derecho presentados por estas,[12] el 23 de octubre de 2023, notificada al día siguiente, el Tribunal de Primera Instancia emitió la *Sentencia Parcial* que nos ocupa.[13] En esta, desglosó las siguientes determinaciones de hechos:

> Las partes otorgaron la [E]scritura Número 96 sobre Capitulaciones Matrimoniales el 28 de diciembre de 1998, de la cual surge que las partes libre y voluntariamente acordaron que el régimen económico de su futuro matrimonio y las condiciones relativas a la administración y disposición de sus bienes respectivos, presentes y futuros no se entendería contraído bajo el régimen de la sociedad legal de gananciales. Que cada uno respondería por separado de las deudas presentes y futuras que contraigan y que los bienes adquiridos durante la vigencia del matrimonio que fueran adquiridos mediante la aportación de dinero de ambos, se constituirán las partes en comuneros en la proporción y porciento aportado por cada una.

> Al momento de otorgar la [E]scritura de Capitulaciones Matrimoniales[,] la [apelante] trabajaba como maestra y el [apelado] como médico.

> Las partes contraen matrimonio el 30 de julio de 1999[,] bajo el acuerdo del régimen de separación de bienes.

> El matrimonio de las partes quedó disuelto mediante Sentencia de divorcio dictada en el caso número AG2020RF00460, ante el Tribunal Superior de Aguadilla, por la causal de [r]uptura [i]rreparable.

> La demandante sostiene que dado que en la [E]scritura de Capitulaciones Matrimoniales, las partes hicieron constar que tenían proyectado casarse el 30 de diciembre de 1998 y que como no se casaron en la fecha proyectada, sino el 30 de julio de 1999, se casaron sin la

---

[12] Apéndice del recurso, págs. 52-80.
[13] Íd., págs. 81-90.

existencia de capitulaciones, bajo el régimen de sociedad de bienes gananciales.

La demandante testificó durante la vista evidenciar[i]a, que[,] al no estar de acuerdo con las capitulaciones matrimoniales, al salir de la oficina del notario[,] terminó la relación de noviazgo con el demandado. Que unos días después de la ruptura del noviazgo, el demandado la llamó, que deseaba reanudar la relación, que se quería casar sin capitulaciones y que los bienes adquiridos durante el matrimonio serían para los dos. No nos mereció credibilidad el testimonio de la demandante.

Lo cierto es que las partes no estipularon en su contrato pre matrimonial que, si no se casaban en la fecha proyectada, las capitulaciones quedarían sin efecto, ni modificaron ni dejaron sin efecto la misma, previo a contraer matrimonio.

Incluso, siempre las partes reconocieron la existencia de la [E]scritura de Capitulaciones Matrimoniales. Veamos.

Las partes utilizaron dicha [E]scritura cuando originalmente peticionaron el divorcio por la causal de consentimiento mutuo. Exhibit II.

La Sentencia de divorcio emitida dispuso que las partes no adquirieron bienes muebles, inmuebles ni deudas vigente el matrimonio, pues se casaron con capitulaciones matrimoniales. Exhibit III.

Posteriormente, las partes se reconciliaron, por lo que dejaron sin efecto el divorcio, por lo que se relevó la Sentencia dictada. Exhibit IV.

El demandado radicó la demanda de divorcio por la causal de [r]uptura [i]rreparable y alegó que habían otorgado [una] [E]scritura de Capitulaciones Matrimoniales donde eligieron el régimen económico de total separación de bienes, por lo que no adquirieron bienes muebles ni inmuebles ni deudas. Exhibit V.

La demandante contestó la demanda y aceptó que se habían casado con capitulaciones matrimoniales eligiendo el régimen económico de total separación de bienes. Exhibit VI.

En la Sentencia de divorcio dictada se dispuso en la Determinación de Hechos número 3 que[,] al momento de contraer matrimonio[,] las partes habían otorgado capitulaciones matrimoniales bajo la [E]scritura [N]úmero 96 del 28 de diciembre de 1998 ante el [n]otario [p]úblico, Lcdo. José R. Ramos Hernández, en Aguada, Puerto Rico, por lo que el matrimonio se rigió por una total separación de bienes. Además, determinó que[,] durante la vigencia del matrimonio[,] no se adquirieron bienes muebles ni inmuebles, así como tampoco se contrajeron deudas u obligaciones. Exhibit VII. Esta Sentencia[,] al presente[,] es final, firme e inapelable.

La demandante siempre ha reconocido la existencia y validez de la [E]scritura de Capitulaciones Matrimoniales, pero actuando en contra de sus propios actos, 14 meses

después de haber sometid[o] la demanda de epígrafe, reconociendo su existencia, intenta persuadir a este Tribunal que las mismas son nulas. No nos persuade la demandante.

No nos mereció credibilidad el testimonio de la demandante que[,] al otorgar la [E]scritura de Capitulaciones Matrimoniales[,] fue obligada por el demandado a comparecer a la oficina del notario público a otorgarlas.

Tampoco nos mereció credibilidad el testimonio de la demandante a los efectos de que no se casó el 30 de diciembre de 1998, porque se dejó del demandado y que luego se reconciliaron y se casaron 6 meses después sin capitulaciones.

En todos los procedimientos posteriores a la separación de las partes, ante el Tribunal Superior de Aguadilla y ante este Tribunal[,] la demandante siempre reconoció la validez de las mismas.

La [E]scritura de Capitulaciones Matrimoniales otorgada por las partes cumple con todos los requisitos exigidos en el derogado Código Civil de 1930.

En su consecuencia, sostenemos la existencia y validez de la [E]scritura [N]úmero 96 de Capitulaciones Matrimoniales otorgada por las partes el 28 de diciembre de 1998, previo a contraer matrimonio.[14]

El foro primario concluyó que la Escritura de Capitulaciones Matrimoniales estaba vigente al momento de las partes casarse y que las mismas no fueron modificadas ni dejadas sin efecto, previo a contraer matrimonio. Por tanto, el foro *a quo* reconoció su validez. Particularmente, luego de indicar que no le mereció credibilidad el testimonio de Ramírez Montalvo durante la vista evidenciaria, determinó la existencia y validez de la Escritura Núm. 96 sobre las Capitulaciones Matrimoniales. En su consecuencia, razonó que las partes habían contraído matrimonio bajo el régimen de separación de bienes.

Inconforme, el 29 de noviembre de 2023, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

Erró el Honorable Tribunal de Primera Instancia en la interpretación del contrato de capitulaciones soslayando la norma que establece que estas se interpretan de forma restrictiva y las normas de hermenéutica aplicables, a pesar de tener ante sí un contrato que contiene un lenguaje claro y libre de ambigüedad y al proceder en la sentencia a variar las disposiciones del mismo.

---

[14] Apéndice del recurso, págs. 83-86.

Erró el Honorable Tribunal de Primera Instancia en la interpretación del contrato de capitulaciones, ignorando que por disposición de las partes la eficacia del contrato quedó supeditada al cumplimiento de su matrimonio en fecha cierta; que es una condición suspensiva que no se materializ[ó], y al resolver que las partes contrajeron matrimonio el 30 de julio de 1999 bajo el régimen de separación de bienes, en contra de lo pactado expresamente por las partes y en contra de la doctrina de inimutabilidad *[sic]* de las capitulaciones matrimoniales vigente para entonces.

Erró el Honorable Tribunal de Primera Instancia e incumplió con las disposiciones del Art. 1233 del Código Civil, 31 L.P.R.A. § 3471 y lo resuelto por el Tribunal Supremo en Guadalupe Solís v. González Durieux, 172 D.P.R. 676 (2007), al entrar [a] divagar en la intención de los contratantes a base de actos anteriores, coetáneos y posteriores, cuando las disposiciones contractuales son claras y libres de toda ambigüedad, siendo la controversia una de estricto Derecho.

Erró el Honorable Tribunal de Primera Instancia al resolver que la[s] capitulaciones eran eficaces porque las partes no cumplieron con lo siguiente: 1) incluir una cláusula que estableciera que si no contraían matrimonio las capitulaciones quedarían sin efecto; en la alternativa, 2) no cumplieron con la obligación de modificar las capitulaciones matrimoniales con el propósito de dejarlas sin efecto; todo ello obviando los términos contenidos en el propio contrato y en abstracción de las disposiciones de ley que regulan su eficacia.

Cometió un abuso de discreción el Honorable Tribunal de Primera Instancia en la apreciación de la prueba testifical vertida por la Apelante, mostrando prejuicio y parcialidad, consistente en que procedió a descartar, caprichosamente, hechos específicos, determinados y no contradichos declarados por esta, sobre las circunstancias anteriores, coetáneas y posteriores al otorgamiento de la [E]scritura de [las] [C]apitulaciones [M]atrimoniales que dieron lugar a que la Apelante rompiera su relación y no contrajera matrimonio en la fecha pactada con el Apelado, sin que medie justificación en el r[é]cord que sostenga su determinación y apartándose de su obligación de evaluar la prueba objetivamente, con el propósito de arribar a un balance justo y racional, a base de la totalidad de la misma.

Erró el Honorable Tribunal de Primera Instancia en la evaluación y suficiencia de la prueba y actuó con prejuicio y parcialidad al dictar una sentencia confiriendo un peso desmedido a prueba impertinente; a saber[,] la opinión previa vertida por las partes sobre sus capitulaciones; abdicando su responsabilidad de evaluar el contrato tal y como quedó redactado y en violación a la norma establecida por [el] Tribunal Supremo en los casos de Vilariño Martínez v. Registrador, 88 DPR 288 (1963)[,] y Guadalupe Solís v. González Durieux, 172 D.P.R. 676, 684 (2007), en el sentido de que "no son los otorgantes los llamados en casos de conflicto a interpretar las capitulaciones, pues esa facultad se halla reservada al criterio judicial cuando es requerido en forma para dar solución a intereses y derechos encontrados."

Erró el Honorable Tribunal de Primera Instancia al resolver que las partes "siempre reconocieron la existencia de la [E]scritura de Capitulaciones Matrimoniales", cuando el testimonio y la evidencia documental de la Apelante, demuestra que ello no es correcto; además de que indujo a esta parte a error al resolver que la evidencia de la Apelante quedaría como identificación por no ser necesaria, pues la vista era únicamente para determinar la eficacia del contrato de capitulaciones, para luego dar peso únicamente a los eventos posteriores de divorcio entre las partes y fundar su sentencia exclusivamente en los mismos y no en el contrato y el derecho aplicable.

Erró el Honorable Tribunal de Primera Instancia y actuó con prejuicio y parcialidad al determinar que no le mereció credibilidad el testimonio de la demandante ni su testimonio de que fue obligada a otorgar la Escritura de Capitulaciones, toda vez que la Apelante no testificó tal cosa, por lo que no hay base en el r[é]cord que sostenga tal determinación.

Erró el Honorable Tribunal de Primera Instancia y actuó con prejuicio y parcialidad al aplicar la doctrina de los actos propios para justificar su sentencia y que "no le persuade" la posición o testimonio [de] la demandante en ausencia de prueba contradictoria, cuando dicha doctrina no es aplicable a los hechos de este caso.

Erró el Honorable Tribunal de Primera Instancia al resolver que la validez y eficacia de las capitulaciones matrimoniales que no[s] ocupan se rigen "supletoriamente" por las reglas generales de los contratos[,] según el "Art. 502 del nuevo Código Civil del 2020 (antes Art. 1335 del Código Civil de 1930)"; cuando dicho artículo era inexistente entonces, no es la ley aplicable y cuando el Art. 1335 citado, establece la naturaleza del precio del contrato de compraventa y la permuta.

En cumplimiento con nuestra *Resolución* del 30 de noviembre de 2023, la parte apelada compareció mediante *Alegato en Oposición al Recurso de Apelación* el 2 de enero de 2024.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A**

El Artículo 1267 del Código Civil de Puerto Rico de 1930,[15] 31 LPRA sec. 3551, dispone que los cónyuges pueden seleccionar el régimen económico que entiendan procedente y conveniente mediante el contrato

---

[15] El derecho aplicable en el caso de autos se remite al Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1 *et seq.* (derogado), toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*

de capitulaciones. Una pareja puede optar por: (1) la separación de bienes, pero con participación en las ganancias; (2) sociedad de gananciales; (3) renunciar al régimen legal de gananciales; (4) total separación de bienes; (5) elegir cualquier otro régimen que combine estas posibilidades, siempre que sea acorde a la ley, la moral o las buenas costumbres. *Maldonado v. Cruz*, 161 DPR 1, 17 (2004); *Domínguez Maldonado v. E.L.A.*, 137 DPR 954, 964 (1995). A falta de un régimen determinado, los cónyuges se casan bajo el régimen supletorio de la sociedad de gananciales. 31 LPRA sec. 3551.

El contrato de capitulaciones permite regular lo siguiente: (1) los derechos de los cónyuges sobre sus respectivos bienes; (2) los derechos sobre las ganancias realizadas por ellos durante el matrimonio; (3) los intereses de los hijos y de la familia; (4) los intereses de los terceros que contratan con alguno de los cónyuges; y, (5) el interés económico y social del matrimonio. *Maldonado v. Cruz*, supra, págs. 15-16; *Domínguez Maldonado v. E.L.A.*, supra, págs. 959-960.

Así, pues, las capitulaciones matrimoniales constituyen contratos, por lo que, en su preparación, rige el principio de libertad de contratación. *Guadalupe Solís v. González Durieux*, 172 DPR 676, 682-683 (2007). Este principio reconoce la autonomía de los contratantes y permite que estos estipulen toda clase de pactos, cláusulas y condiciones. *Íd.*; Art. 1207 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3372. Por ello, "[l]os cónyuges podrán transmitirse por cualquier título bienes y derechos, y celebrar entre sí toda clase de acuerdos que no les estén expresamente prohibidos". Art. 1272 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3556. Estos acuerdos tendrán que cumplir con los requisitos formales y sustantivos esenciales de las capitulaciones matrimoniales y del tipo de contrato de que se trate para ser válidos. *Íd.* Además, "no podrán ser contrarios a la ley, la moral o el orden público ni afectar derechos de terceros". *Íd.*

Los cónyuges podrán estipular, modificar o sustituir el régimen económico estipulado mediante capitulaciones matrimoniales en cualquier momento antes de celebrado el matrimonio. Art. 1271 del Código Civil, 31 LPRA sec. 3555.[16] Sin embargo, de tener la intención de alterar las capitulaciones otorgadas, dichas alteraciones habrán de constar por escritura pública, otorgada antes de la celebración del matrimonio. En cuanto al primer supuesto –que las alteraciones deben realizarse mediante escritura pública–, se ha reconocido "que se trata de un requisito de forma *ad solemnitatem* del cual depende la existencia y validez misma de las capitulaciones". *Maldonado v. Cruz*, supra, pág. 18; J. Santos Briz, *Derecho Civil: Teoría y Práctica*, Madrid, Ed. Rev. Der. Privado, 1982, T. V, pág. 127. Por tal razón, "las capitulaciones matrimoniales que no consten en escritura pública carecerán de toda validez y eficacia pues, según se ha entendido, estamos ante una condición para la existencia de la escritura y no ante un mero requisito de forma". *Íd.*; J.M. Manresa y Navarro*, Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1969, T. IX, págs. 200-201.

En ocasiones, la escritura de capitulaciones matrimoniales requiere un ejercicio de interpretación por ser un contrato entre las partes. *Guadalupe Solís v. González Durieux*, supra, pág. 684. Cuando así se requiere, "los tribunales deberán ejercer su facultad interpretativa conforme a las normas de hermenéutica contractual dispuestas en el Código Civil". *Íd.* El Artículo 1233 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3471, establece que, cuando los términos de un contrato son claros y no dejan duda alguna sobre la intención de las partes, se utilizará el sentido literal de sus cláusulas. Sobre la interpretación de los contratos, el Tribunal Supremo de Puerto Rico ha expresado que esta debe ser cónsona con el

---

[16] La Ley Núm. 62-2018 enmendó los Artículos 1267, 1271, 1272 y 1273 del Código Civil de Puerto Rico de 1930, a los fines de permitir la modificación de las capitulaciones matrimoniales que contienen el régimen económico que rige la unión matrimonial. Es decir, se dejó a un lado la doctrina de inmutabilidad de las capitulaciones matrimoniales para permitir establecer, variar o modificar el régimen económico luego de haberse constituido el matrimonio. No obstante, por encontramos ante hechos ocurridos con anterioridad a la aprobación de dicho estatuto, este no es de aplicabilidad al caso de autos.

principio de la buena fe y no puede llevar a resultados incorrectos, absurdos e injustos. *Íd.*, págs. 684-685.

**B**

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux*, 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su

apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 2023 TSPR 108, 212 DPR ___ (2023); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

Sobre ese particular, nuestro Tribunal Supremo ha reiterado que las disposiciones reglamentarias que gobiernan los recursos que se presentan ante el Tribunal de Apelaciones deben observarse rigurosamente. *Pueblo v. Pérez Delgado*, supra. Véase, *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011). De esa manera, los abogados y las abogadas tienen la obligación de cumplir fielmente con el trámite prescrito en las leyes y en los reglamentos aplicables para el perfeccionamiento de los recursos. *Íd.* No puede quedar al arbitrio de la representación legal decidir qué

disposiciones reglamentarias aplican y cuándo. *Íd.* Por tanto, es tarea de la parte peticionaria presentar al foro revisor la prueba oral bajo la que se pretende impugnar las determinaciones del foro *a quo*. *Íd.*

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

Como primer señalamiento de error, la parte apelante sostiene que el Tribunal de Primera Instancia erró en su interpretación del contrato de capitulaciones matrimoniales y al variar las disposiciones de este. En particular, alega que el foro primario soslayó las normas de hermenéutica aplicables, así como la norma de interpretación restrictiva de los contratos, a pesar de tener ante sí un contrato que contiene un lenguaje claro y libre de ambigüedad. En su segundo señalamiento de error, plantea que el foro juzgador incidió al: (1) ignorar que, por disposición de las partes, la eficacia del contrato quedó supeditada al cumplimiento de su matrimonio en fecha cierta; (2) ignorar que es una condición suspensiva que no se materializó; (3) resolver que las partes contrajeron matrimonio el 30 de julio de 1999, bajo el régimen de separación de bienes, en contra de lo pactado y la doctrina de inmutabilidad. A su vez, como tercer señalamiento de error, arguye que el foro *a quo* erró al entrar a divagar en la intención de los contratantes a base de actos anteriores, coetáneos y posteriores, cuando las disposiciones contractuales de las capitulaciones matrimoniales en cuestión son claras y libres de toda ambigüedad, siendo la controversia una de estricto Derecho. Ello, según aduce, en incumplimiento con las disposiciones del Artículo 1233 del Código Civil de Puerto Rico de 1930, *supra*, y lo resuelto por nuestro Tribunal Supremo en *Guadalupe Solís v. González Durieux*, supra.

En su cuarto señalamiento de error, la parte apelante indica que el foro de origen incidió al resolver que las capitulaciones matrimoniales en controversia eran eficaces, toda vez que las partes no incluyeron una cláusula que estableciera que, si no contraían matrimonio en determinada

fecha, las capitulaciones quedarían sin efecto; o que, en la alternativa, las partes no cumplieron con la obligación de modificar las capitulaciones matrimoniales con el propósito de dejarlas sin efecto. Como quinto error señalado, argumenta que el tribunal de instancia erró al abusar de su discreción en la apreciación de la prueba testifical vertida por Ramírez Montalvo, mostrando prejuicio y parcialidad. En su sexto señalamiento de error, aduce que el Tribunal de Primera Instancia incidió en la evaluación y suficiencia de la prueba y actuó con prejuicio y parcialidad al dictar una sentencia confiriendo un peso desmedido a prueba impertinente. Como séptimo señalamiento de error, alega que el foro primario erró al resolver que las partes siempre reconocieron la existencia de la Escritura de Capitulaciones Matrimoniales, aun cuando el testimonio de Ramírez Montalvo y la evidencia documental admitida demuestran que ello no es correcto.

Asimismo, en su octavo señalamiento de error, la parte apelante sostiene que el foro *a quo* actuó con prejuicio y parcialidad al no merecerle credibilidad a su testimonio de que fue obligada a otorgar la Escritura de Capitulaciones, ya que no testificó tal cosa, por lo que no había base en el expediente que sostuviera tal determinación. Como noveno error, señala que el foro juzgador incidió al aplicar la doctrina de los actos propios para justificar su *Sentencia Parcial* y al expresar que no le persuadió la posición o testimonio de esta, en ausencia de prueba contradictoria, cuando dicha doctrina no es aplicable a los hechos de este caso. En su décimo y último señalamiento de error, sostiene que el foro de origen erró al resolver que la validez y eficacia de las Capitulaciones Matrimoniales que nos ocupan se rige supletoriamente por las reglas generales de los contratos, según el Artículo 502 del Código Civil de Puerto Rico del 2020, 31 LPRA sec. 6935, cuando dicho articulado era inexistente al momento de los hechos y es inaplicable al caso de autos.

Por estar relacionados entre sí, discutiremos los errores esbozados conjuntamente.

Conforme detalláramos previamente, como norma general, los tribunales apelativos aceptamos como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. Los foros apelativos no debemos intervenir con la apreciación de la prueba de los foros primarios, salvo que exista pasión, prejuicio, parcialidad o error manifiesto. Es decir, el foro primario merece deferencia ante planteamientos de error sobre admisibilidad de la prueba presentada y la apreciación que le confirió, especialmente ante la ausencia de una transcripción de los procedimientos que nos ponga en posición de lo contrario. En el caso de autos, la parte apelante no sometió copia de la transcripción de la prueba oral vertida en la vista evidenciaria en cuestión, por lo que, en su ausencia, se presumen correctas las determinaciones de hechos desglosadas por el foro *a quo* en la *Sentencia Parcial* apelada. En ese sentido, nuestra intervención se ciñe a atender cuestiones puramente normativas a la luz de la prueba expresamente contenida en el expediente apelativo que atendemos.

Según el derecho esbozado, las capitulaciones matrimoniales constituyen un contrato entre las partes, en el cual pueden pactar el régimen económico que entiendan procedente y conveniente. En la preparación del contrato de capitulaciones matrimoniales, rige el principio de libertad de contratación. Este principio reconoce la autonomía de los contratantes y permite que estos estipulen toda clase de pactos, cláusulas y condiciones, siempre y cuando no sean contrarios a la ley, la moral o el orden público, ni afecten los derechos de terceros. Por ser un contrato entre las partes, en ocasiones, la escritura de capitulaciones matrimoniales requiere un ejercicio de interpretación, en el que los tribunales deberán ejercer su facultad interpretativa conforme a las normas de hermenéutica contractual dispuestas en el Código Civil. En particular, cuando los términos de un contrato son claros y no dejan duda alguna sobre la intención de las partes, se utilizará el sentido literal de sus cláusulas.

Por otro lado, conforme a lo previamente discutido, los cónyuges pueden modificar o sustituir el régimen económico estipulado mediante capitulaciones matrimoniales en cualquier momento antes de celebrado el matrimonio. No obstante, dichas alteraciones habrán de constar por escritura pública, otorgada antes de la celebración del matrimonio. Ello, se trata de un requisito de forma *ad solemnitatem* del cual depende la existencia y validez de las capitulaciones. Es decir, para poder modificar las capitulaciones matrimoniales, todas las alteraciones deben realizarse mediante escritura pública, para que, de esa forma, surta su validez y eficacia.

Luego de examinar sosegadamente el expediente ante nos, se desprende claramente que, previo a contraer matrimonio, el 28 de diciembre de 1998, Ramírez Montalvo y Rodríguez Rosa otorgaron la Escritura Núm. 96 sobre Capitulaciones Matrimoniales.[17] En esta, repudiaron la sociedad legal de gananciales y se acogieron al régimen económico de total separación de bienes. En lo pertinente, la cláusula primera de la referida escritura lee como siguiente:

-----UNO: Ambos comparecientes convienen entre sí, de mutua conformidad, que su futuro matrimonio no se entenderá contraído bajo el régimen de la Sociedad Legal de Gananciales que impera en Puerto Rico.----------------------------
-----DOS: En orden a la estipulación contenida en el apartado que antecede, ambas partes estipulan y convienen que[,] durante su proyectado matrimonio[,] cada uno de ellos responderá por separado de las deudas presentes y futuras que contraigan.-----------------------------------------------------------
-----TRES: Todos los salarios e ingresos por gestiones profesionales de cada cónyuge, pertenecerán de manera privativa a cada uno de [e]stos.--------------------------------------
-----CUATRO: Todas las ganancias, beneficios, rentas, frutos, productos, intereses y dividendos de los bienes propios de cada cónyuge, pertenecerán de manera privativa a cada uno de [e]stos.---------------------------------------------------------------
-----Cinco: Es convenido por las partes renunciar a la Sociedad de Bienes Gananciales y estipulan que los bienes a adquirirse durante la vigencia del matrimonio que fueran adquiridos mediante la aportación de dinero de ambos, se constituirán las partes en comuneros en la proporción y porciento aportado por cada una.-------------------------------------
-----SEIS: La determinación, liquidación y pago de cualquier contribución de ingresos que se imponga o corresponda pagar sobre las ganancias, beneficios, frutos, rentas, productos, interes[e]s y dividendos de cada cónyuge se regirá

---

[17] Véase, Apéndice del recurso, págs. 8-13.

por las disposiciones de ley que entonces estuviesen en vigor.-------------------------------------------------------------------

Asimismo, se desprende de la cláusula primera de la Escritura Núm. 96 sobre Capitulaciones Matrimoniales que "los comparecientes tienen proyectado contraer matrimonio entre sí el treinta (30) de diciembre de mil novecientos noventa y ocho (1998)".[18] No obstante, surge del expediente de autos que Ramírez Montalvo y Rodríguez Rosa contrajeron matrimonio el 30 de julio de 1999. Ahora bien, de una revisión minuciosa de las referidas capitulaciones no se desprende que las partes condicionaran o supeditaran la eficacia de estas a que el matrimonio se efectuara el 30 de diciembre de 1998. De hecho, el lenguaje utilizado por las partes en la referida escritura fue a modo de "proyección"[19] y no de establecer un término fatal que invalidara las capitulaciones de no contraer nupcias en tal fecha cierta. Por otro lado, tampoco surge del expediente ante nos escritura pública alguna mediante la cual las partes modificaran o dejaran sin efecto las capitulaciones matrimoniales previo a contraer matrimonio el 30 de julio de 1999. Por tanto, la Escritura Núm. 96 sobre Capitulaciones Matrimoniales, mediante la cual las partes acordaron regir su matrimonio por un régimen económico de total separación de bienes, estaba vigente al momento de casarse y rigió durante el matrimonio hasta la disolución de este.

La parte apelante sostiene la inexistencia de las capitulaciones matrimoniales durante la vigencia de su matrimonio, por entender que la validez de estas estaba condicionada a contraer nupcias en la fecha proyectada en dicha escritura. Sin embargo, al examinar sosegadamente la prueba documental que obra en autos, colegimos que la propia parte apelante, en varias ocasiones, ha aceptado la existencia y validez de la escritura en cuestión. Veamos.

---

[18] Véase, Apéndice del recurso, pág. 8.
[19] Según la Real Academia Española, *proyectar* significa "[i]dear, trazar o proponer el plan y los medios para la ejecución de algo". Real Academia Española, *Diccionario de la lengua española*, *proyectar*, https://dle.rae.es/proyectar (última visita, 6 de marzo de 2024).

Surge del expediente que, el 21 de abril de 2021, el Tribunal de Primera Instancia disolvió el matrimonio de Ramírez Montalvo y Rodríguez Rosa mediante *Sentencia* de divorcio por la causal de ruptura irreparable.[20] Se desprende de la determinación de hechos número 3 de dicho dictamen que, "[a]l momento de contraer matrimonio, las partes habían otorgado Capitulaciones Matrimoniales bajo la [E]scritura [N]úmero 96 del 28 de diciembre de 1998 […]; por lo que, el matrimonio se rigió por una total separación de benes".[21] La mencionada sentencia advino final y firme, sin que alguna de las partes apelara su contenido y disposición ante un foro revisor.

De igual forma, la propia apelante alegó en la *Demanda* que dio inicio al presente pleito en junio de 2021 que, "[p]revio a contraer matrimonio, las partes de epígrafe otorgaron una [E]scritura de Capitulaciones Matrimoniales".[22] Asimismo, surge de la *Minuta* del *Status Conference* celebrado el 18 de agosto de 2022, que la representación legal de Ramírez Montalvo sostuvo que la Escritura de Capitulaciones Matrimoniales en controversia era válida.[23] No fue hasta el 30 de noviembre de 2022 que Ramírez Montalvo solicitó enmendar la demanda para asumir una postura contraria y alegar que, previo al matrimonio, las partes no otorgaron capitulaciones matrimoniales, por lo que rigió la sociedad legal de gananciales.[24] Sin embargo, luego de un análisis exhaustivo del expediente ante nos, colegimos que la Escritura Núm. 96 sobre Capitulaciones Matrimoniales suscrita por las partes el 28 de diciembre de 1998 estaban vigentes al momento del matrimonio de Ramírez Montalvo y Rodríguez Rosa, por lo que este se rige por lo allí acordado.

Examinado con detenimiento el recurso ante nos, a nuestro juicio, el foro primario no incidió en su proceder. En consecuencia, nos resulta

---

[20] Véase, Apéndice del recurso, págs. 5-7.
[21] Íd., pág. 5.
[22] Íd., pág. 1.
[23] Íd., págs. 23-24.
[24] Íd., págs. 25-30.

forzoso concluir que los errores imputados por la parte apelante no se cometieron. Por lo tanto, confirmamos la *Sentencia Parcial* apelada.

**IV**

Por las razones que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones